# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| KIEYONA JONES, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    Civil Case No. 3:21-cv-0069 |
| | ) |
| DFW SECURE LLC D/B/A | ) |
| SIGNAL 88 SECURITY, | ) |
| | ) |
|     Defendant. | ) |
| | ) |

### PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, KIEYONA JONES ("Plaintiff" or "Jones") and files her complaint against Defendant, DFW SECURE LLC D/B/A SIGNAL 88 SECURITY ("Defendant" or "Signal 88") and in support she states the following:

### NATURE OF THE ACTION

1. This is an action for monetary damages and injunctive relief, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Texas Commission on Human Rights Act, 1.3.3 Article 5221K, *et seq.* ("TCHRA") to redress Defendant's unlawful employment practices against Plaintiff including discrimination, harassment, and hostile work environment because of her sex, and retaliation following her engagement in protected activity, leading to Plaintiff's unlawful termination under pretext.

### JURISDICTION AND VENUE

2. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under Title VII.

3. This Court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. § 1367(a).

4. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein occurred in this district.

## THE PARTIES

5. Plaintiff is a citizen of the United States and, at all times material, her primary residence was in Wichita County, Texas.

6. Defendant is a domestic limited liability company with its principal place of business located in Dallas, TX.

7. Plaintiff last worked for Defendant at its 13619 Inwood Road, Suite 325, Farmer's Branch, TX 75244 location.

8. Defendant is an employer as defined by the laws under which this action is brought and employs the requisite number of employees.

## PROCEDURAL REQUIREMENTS

9. Plaintiff has complied with all statutory prerequisites to filing this action.

10. On or about March 12, 2019, Plaintiff dual-filed a claim with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission Civil Rights Division ("TWCCRD"), satisfying the requirements of 42 U.S.C. § 2000e5(b) and (e), based on sex and retaliation.

11. Plaintiff's charge was filed within one hundred and eighty days after the unlawful employment practices occurred.

12. On September 3, 2020, the EEOC issued a determination finding that there was reasonable cause to believe that the Respondent violated Title VII.

13. On February 3, 2021, the EEOC issued Plaintiff a Notice of Right to Sue (Conciliation Failure).

14. This complaint was filed within ninety (90) days of the EEOC's issuance of the Notice of Right to Sue.

## FACTUAL ALLEGATIONS

15. Plaintiff was hired by Defendant as a Patrol Officer on or about August 29, 2018 and began working for Defendant on September 4, 2018.

16. Beginning shortly after she was hired, Plaintiff's Supervisor, Sherman Shoulders, told Plaintiff that she had a "nice ass," made continuous references to his prowess with oral sex, and followed Plaintiff around attempting to engage her in a sexual relationship.

17. Plaintiff rebuffed Mr. Shoulders' advances and warned him numerous times to leave her alone to no avail.

18. Plaintiff was extremely uncomfortable working with Ms. Shoulders as she worked overnight shifts and was often alone with Mr. Shoulders in dark unsupervised locations and Mr. Shoulders outweighed her by over 100 pounds.

19. In November 2018, Defendant promoted Plaintiff to a Dispatcher position.

20. That same month, Plaintiff began verbally reporting Mr. Shoulders' harassment to Lisa Hall (Operations Manager). Plaintiff repeatedly informed Ms. Hall of Mr. Shoulders' continued harassment and unwanted advances and how his actions were creating a hostile work environment.

21. Ms. Hall simply instructed Plaintiff to ignore the harassment and to have a "tough skin."

22. On or about December 14, 2018, Defendant promoted Plaintiff a second time to a Supervisor position.

23. During the same month, Defendant promoted Mark Haitz to Operations Manager.

24. Plaintiff continued verbally reporting the sexual harassment she was enduring from Mr. Shoulders, this time to Mr. Haitz. Mr. Haitz brushed off and ignored her complaints and told Plaintiff to "just ignore [Mr. Shoulders]."

25. In early February 2019, Mr. Haitz and Plaintiff had a meeting about starting to train her for an upper management position.

26. During the evening of February 21, 2019, Mr. Haitz asked Plaintiff to train a new employee instead of having Mr. Shoulders complete the training. When Mr. Shoulders was forced to go out on the route rather than train a new employee, he became irate, smashed his backpack, rattled the glass, and knocked gas cards off the wall.

27. That same night Plaintiff, being fearful for her safety, reported Mr. Shoulders' erratic and violent behavior to Ms. Hall via telephone and Ms. Hall instructed Plaintiff to submit the complaint via email.

28. Later the same morning, on or about February 22, 2019, Plaintiff was given a disciplinary write-up for her complaint about Mr. Shoulders' erratic and violent behavior because Defendant claimed her report was outside of the chain of command despite Ms. Hall having directed Plaintiff to do so.

29. Additionally, Defendant's Policies and Procedures states, "… an Operation Manager doesn't get a day off. You will be called or texted all hours of the day and night. That

responsibility comes with the title." Therefore, Plaintiff could have reported her complaint to any Operation Manager, not just the one who was on duty at the time and, as such, her complaint to Ms. Hall was proper and not in violation of company policy.

30.     After receiving the retaliatory disciplinary action, Plaintiff put her complaint about Mr. Shoulders' aggressive and threatening behavior in writing and sent the email to Ms. Hall on or about February 22, 2019 at approximately 5:00 a.m.,

31.     On or about Monday, February 25, 2019 at approximately 3:45 a.m., Plaintiff reiterated her complaint to Mr. Haitz: that Mr. Shoulders had been sexually harassing her daily for months by asking her out repeatedly, making comments about her body, and mentioning his oral sex prowess.

32.     During the conversation with Mr. Haitz on February 25th, Mr. Haitz explained that the write-up came from "higher up," stated, "I did not say it is right," and asked, "Did I say I want to do it?"

33.     In response to Mr. Haitz's statement, Plaintiff replied, "I did come to you, Mark, I came here, and I closed that door, and I asked you about it, and you just blew it off." Mr. Haitz then proceeded to take responsibility for failing to take any remedial action in response to Plaintiff's multiple complaints, and informed Plaintiff she could tell Sid Turner (Director of Operations) that he said that.

34.     Mr. Haitz then proceeded to informed Mr. Turner and Shannon Lucky (Human Resources Director), of Plaintiff's protected sexual harassment complaints.

35.     On or about February 26, 2019, Plaintiff emailed Ms. Hall and Mr. Haitz another protected complaint of sexual harassment in writing. Her complaint contained the following: (1) An explanation that it was contrary to policy to issue her a disciplinary action for reporting sexual

harassment; (2) A breakdown of the sexual harassment that she had been complaining about from Mr. Shoulders for months; (3) An explanation that she had been reporting the harassment and had been told by the Operations Managers to "ignore it," "have tough skin," or "it's just a guy thing;" (4) An explanation that Mr. Shoulders threatened her, claiming that because of his tight-knit relationship with management she would get fired before he did; and (5) A request for remedial action.

36. That same day, Mr. Turner responded to the email acknowledging receipt, claiming that he was handling it, and stating that he informed Human Resources and the President of the Company of the protected complaint.

37. Plaintiff spoke with Ms. Hall again on February 27, 2019, and she reiterated several times that Plaintiff was a great worker and praised her performance. Additionally, Ms. Hall said, "on a work basis," Defendant was "perfectly happy" with Plaintiff's performance. She went so far as to say, "Your guys are great workers, and nobody can ever dispute that," referring to Plaintiff and Mr. Shoulders.

38. Ms. Hall also stated that she should have taken action when Plaintiff first reported Mr. Shoulders' sexual harassment. She specifically said, "If I would have put my foot down, we would not be where we are now."

39. Ms. Hall further conceded that she had informed Ms. Lucky of Plaintiff's protected complaint when it was first made.

40. The Following day, February 28, 2019, Ms. Jones had a meeting regarding her sexual harassment complaint with Mr. Turner and Ms. Lucky. During the meeting, Plaintiff informed Mr. Turner and Ms. Lucky that she had repeatedly reported the sexual harassment to Ms. Hall and moved on to make her complaints to Mr. Haitz once he became Operations Manager.

Plaintiff also informed Mr. Turner and Ms. Lucky that she was told to have "tough skin" and to let Mr. Shoulders' sexual harassing comments "go in one ear and out the other." Plaintiff further confirmed that she had told Mr. Shoulders that she felt uncomfortable while he was harassing her on numerous occasions.

41. During the meeting with Mr. Turner, Plaintiff also informed them that she had relayed and reported another woman's sexual harassment by Mr. Shoulders to Mr. Haitz and that woman was fired a couple days later. Plaintiff also confirmed that a third woman complained about sexual harassment from Mr. Shoulders and was terminated the following day.

42. During the February 28th meeting, Mr. Turner confirmed that Plaintiff was a member of the "best Supervisor Team."

43. During a subsequent conversation with Ms. Hall, on or around March 1, 2019, she informed Plaintiff that Mr. Turner believed Plaintiff about the harassment.

44. Mr. Turner and Plaintiff set up a follow up meeting for March 6, 2019 at 10:00 a.m. Plaintiff arrived at Defendant's location for the meeting with Mr. Turner at approximately 9:30 a.m. and waited for Mr. Turner until approximately 10:50 a.m. Mr. Turner never became available for the meeting and Plaintiff left.

45. After Plaintiff left, another Operations Manager, Leo Salinas, text messaged her and told her that she was removed from the schedule until she was able to meet with Mr. Turner.

46. On March 11, 2019, Mr. Turner and Ms. Lucky met with Plaintiff and terminated her employment under the pretext of poor performance after both Mr. Turner and Ms. Hall complimented Plaintiff's performance less than 2 weeks prior.

47. Defendant subjected Plaintiff to sexual harassment and a hostile work environment and then terminated her in retaliation for her protected complaints.

48. Defendant's unlawful termination of Plaintiff's employment was in close temporal proximity to Plaintiff's protected complaints.

49. Defendant knew or should have known of the sexual harassment and retaliatory conduct because its supervisor(s) and members of management observed it and/or participated in it.

50. The effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex.

51. The unlawful employment practices complained of in the above-mentioned paragraphs were intentional.

52. The unlawful employment practices complained of in the above-mentioned paragraphs were done with malice or with reckless indifference to the statutory and/or federally protected rights of Plaintiff.

53. Plaintiff has been damaged by Defendant's illegal conduct.

54. Plaintiff has had to retain the services of undersigned counsel and has agreed to pay said counsel reasonable attorneys' fees.

### **Count I: Sexual Harassment in Violation of Title VII**

55. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-54 above.

56. Defendant's sexually harassing actions were so frequent and severe that it created a hostile work environment.

57. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of Title VII Plaintiff has suffered and continues to suffer, lost wages and lost

benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

58. Defendant's unlawful conduct in violation of Title VII was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling her to an award of exemplary and/or punitive damages.

### Count II: Sex Based Discrimination in Violation of Title VII

59. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-54 above.

60. At all times relevant to this action, Plaintiff was in a protected category under Title VII because of her sex, female.

61. Defendant is prohibited under Title VII from discriminating against Plaintiff because of her sex regarding discharge, employee compensation, and other terms, conditions, and privileges of employment.

62. Defendant violated Title VII by terminating and discriminating against Plaintiff based on her sex.

63. Defendant intentionally discriminated against Plaintiff based on her sex.

64. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of Title VII Plaintiff has suffered and continues to suffer, lost wages and lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-

confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

65. Defendant's unlawful conduct in violation of Title VII was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling her to an award of exemplary and/or punitive damages.

### Count III: Retaliation in Violation of Title VII

66. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-54 above.

67. Plaintiff engaged in protected activity under Title VII on more than one occasion while employed by Defendant.

68. Defendant engaged in intentional retaliation against Plaintiff for her participation in protected activity.

69. Defendant's conduct violated Title VII.

70. Defendant's discriminatory conduct, in violation of Title VII has caused Plaintiff to suffer a loss of pay, benefits, and prestige for which she is entitled to damages.

71. Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages.

72. Defendant has engaged in discriminatory practices with malice and reckless indifference to Plaintiff's federally protected rights, thereby entitling her to punitive damages.

### Count IV: Sexual Harassment in Violation of the TCHRA

73. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-54 above.

74. Defendant's sexually harassing actions were so frequent and severe that it created a hostile work environment.

75. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the TCHRA Plaintiff has suffered and continues to suffer, lost wages, lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

76. Defendant's unlawful conduct in violation of the TCHRA was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling her to an award of exemplary and/or punitive damages.

### Count V: Sex Based Discrimination in Violation of the TCHRA

77. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-54 above.

78. At all times relevant to this action, Plaintiff was in a protected category under the TCHRA because of Plaintiff's sex.

79. Defendant is prohibited under the TCHRA from discriminating against Plaintiff because of Plaintiff's sex regarding discharge, employee compensation, and other terms, conditions, and privileges of employment.

80. Defendant violated the TCHRA by unlawfully terminating and discriminating against Plaintiff based on her sex.

81. Defendant intentionally discriminated against Plaintiff based on her sex.

82. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the TCHRA Plaintiff has suffered and continues to suffer, lost wages, lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

83. Defendant's unlawful conduct in violation of the TCHRA is outrageous and malicious, intended to injure Plaintiff, and has been done with conscious disregard of Plaintiff's civil rights, entitling her to an award of exemplary and/or punitive damages.

### Count VI: Retaliation in Violation of the TCHRA

84. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-54 above.

85. Plaintiff engaged in protected activity under the TCHRA while employed by Defendant.

86. At all times relevant to this action, Plaintiff was in a protected category under the IHRA because of her sex.

87. Defendant's conduct violates the TCHRA.

88. Defendant's discriminatory conduct, in violation of the TCHRA has caused the Plaintiff to suffer a loss of pay, benefits, and prestige for which she is entitled to damages.

89. Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages.

90. Defendant has engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's statutorily protected rights, thereby entitling her to punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, requests this Honorable Court:

a) Enter judgment requiring Defendant to pay back wages and back benefits found to be due and owing at the time of trial, front-pay, compensatory damages, including emotional distress damages, in an amount to be proved at trial, punitive damages, liquidated damages, and prejudgment interest thereon;

b) Grant Plaintiff costs and an award of reasonable attorneys' fees (including expert fees); and

c) Award any other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all triable issues herein.

Respectfully Submitted:
*/s/ Gabrielle E. Klepper*
Gabrielle E. Klepper
Texas Bar Number: 24090213
**Spielberger Law Group**
4890 W. Kennedy Blvd., Suite 950
Tampa, Florida 33609
T: (800) 965-1570
F: (866) 580-7499
Gabrielle.Klepper@spielbergerlawgroup.com

*Counsel for Plaintiff*